LINE *v.* McCALL.[1]

1. PARTNERSHIP — JUDGMENT — ASSIGNMENT OF PART INTEREST — EQUITY—SETTLEMENT.

L. and A., as copartners, brought suit against defendants, and agreed with two of the complainants to pay them a certain percentage of the amount that might be recovered therein. Judgment was obtained in such suit, and L., with the consent of A., assigned his interest therein to the third complainant. Defendants subsequently, with knowledge of complainants' claims, compromised and settled the judgment with A. *Held,* that complainants acquired rights in the judgment which would be protected in equity as against the settlement.

2. SAME—APPEAL—CONDITIONAL RELIEF.

The vacation of the settlement, however, was made conditional on complainants' assent to the reinstatement of defendants' motion for a new trial in the suit at law, which was pending at the time of the settlement.

GRANT, J., dissenting.

[1] Rehearing denied July 19, 1901.

Appeal from Ontonagon; Haire, J. Submitted February 1, 1901. Decided May 7, 1901.

Bill by Mary Line, Luther M. Packard, and Albert J. Pauli against Alexander McCall and James McBurney to set aside the discharge of a judgment. From a decree dismissing the bill, complainants appeal. Reversed.

*Ball & Ball*, for complainants.

*Arch. B. Eldredge*, for defendants.

GRANT, J. In 1894, and until some time in 1895, Lou J. Le Veque and Henry Alway were copartners; their business, as testified to by Alway, being "making board timber, buying and selling pine lands, looking up lands, estimating timber, taking options, and making waney board timber." They claim to have made a parol contract with defendants by which it was agreed that they were to get out for the defendants waney pine timber on certain descriptions of land, for which they (the plaintiffs) were then negotiating, and which they claim to have afterwards purchased under the contract with defendants. They also claim for services in acquainting defendants with the fact of there being a large quantity of pine timber upon these same lands.

Le Veque & Alway commenced a suit by attachment January 25, 1895, and caused a large amount of timber belonging to the defendants to be seized. This suit was based upon the alleged refusal of defendants to carry out this contract. The ground alleged for the attachment was that the obligation upon which suit was brought was fraudulently incurred by the defendants. Defendants moved to dissolve the attachment. This motion was heard upon the merits, and the record contains the testimony of Le Veque and Alway, then taken. Defendants denied making the agreement. The attachment was dissolved, and there is nothing in the testimony of Le Veque and Alway to justify their affidavit for the attach-

ment. Issue was duly framed in the suit, and the case noticed for trial at the June term in the circuit court for the county of Ontonagon. On June 24th the defendants, through their attorney, William S. Hill, made an application for a continuance, which was denied. The attorney of record for Le Veque & Alway was not present, but they were represented by one Charles Line, an attorney, and a brother-in-law of Le Veque. Hill entered into verbal negotiations with Line and the plaintiffs for a continuance of the case. McBurney was the one with whom plaintiffs claimed that their contract was made, and he was the material witness in the case. He was absent in Canada. Hill testified that he had made an arrangement for a continuance of the case upon payment of $400 upon another claim which plaintiffs had against defendants. Hill returned to Marquette, his home, and sent an order for $400 in accordance with the supposed agreement for a continuance. Plaintiffs denied the arrangement, and took judgment on the 28th of June for $5,902. At the time of rendering the judgment, the court made an order allowing the defendants 20 days in which to file a bond to pay whatever judgment should be recovered on a retrial, and also extending the time until the first day of the next term—October—in which to move for a new trial. This was in accordance with a telegram of the 28th, sent to Mr. Hill by Mr. R. C. Flannigan, one of the attorneys for plaintiffs, who had gone to Ontonagon after Mr. Hill had left. This telegram reads as follows:

"Parties positively will not continue Le Veque case, but, if you will give bond satisfactory to us to pay whatever judgment recovered on retrial, and pay costs of this term, will consent that new trial be ordered. This is very best clients permit me to offer. Answer immediately. Court now waiting."

To which Mr. Hill replied immediately by telegram to the circuit judge:

"Flannigan offers retrial on our giving bond. I prefer trial on Monday. Can I have it? If not, will accept Flannigan."

Before this telegram was received by the circuit judge,. judgment had been taken. To this telegram the judge replied:

"Judgment for plaintiff for $5,902. Telegram came too late. Forward your bond soon. I go home to-morrow."

To this Mr. Hill replied:

"Give me stay for 20 days to get bond, and till next term to move for new trial."

To which the judge replied:

"Yes; this is bond under Flannigan's proposition."

On July 8th, Mr. Brown, the attorney of record for plaintiffs, sent to Mr. Hill a form of bond in the penal sum of $8,000, with a stipulation for vacating the judgment upon the execution of the bond. In reply to this Mr. Hill wrote, offering a bond for $3,500, to which Mr. Brown replied, on July 13th, that a bond in the sum of $6,000 would be satisfactory. On July 18th, Mr. Hill entered a motion for a new trial, at the same time filing a bond in the sum of $3,500. Learning that an execution had been issued, Mr. Hill then filed a bond in the sum of $6,000, whereupon the circuit judge, on the 24th day of July, entered an order reciting the filing of the two bonds, and recalling the execution until the motion for a new trial could be heard. This was superseded by a similar order, made August 6, 1895.

While matters thus stood, defendants and Le Veque & Alway, through Mr. Alway, entered into an agreement of settlement of this suit and all other differences between them. By this settlement defendants were to pay Le Veque & Alway $1,100. Before the amount was paid, Le Veque & Alway were to produce a release and discharge of all claims by or on behalf of their attorneys. Such releases were obtained from all the attorneys, and on the 11th of September $1,100 was paid, and Le Veque & Alway gave a receipt in accordance with the agreement.

of settlement; the receipt being executed in the name of the firm by Mr. Alway. Satisfaction of the judgment was duly executed by Alway in the name of the firm, and was duly filed in the circuit court.

On February 1, 1895, Le Veque & Alway executed an agreement to Luther M. Packard and Albert J. Pauli, reciting a consideration of one dollar and other valuable things, and agreeing to pay said Packard and Pauli "an amount in money equal to fifteen per cent. of the total amount recovered by us, after paying all legitimate expenses of suit, in a suit commenced by attachment by us against Alexander McCall and James McBurney in the circuit court for the county of Ontonagon, January 25, 1895." The agreement further recited:

"We also agree, for the consideration above mentioned, to allow B. J. Brown, Esq., attorney of record in said case, on the final settlement of the case, either by judgment in our favor or otherwise, to deduct from such amount the fifteen per cent. aforesaid, and to pay the same to said Luther M. Packard and Albert J. Pauli; the balance to be paid to us."

On July 26, 1895, Le Veque made an assignment of his interest in the judgment to Mary Line. On the 9th of September a notice of this assignment was served on Mr. Hill. On the same day notice was also served of the agreement with Packard and Pauli. Subsequently complainants filed this bill to set aside the settlement and satisfaction of the judgment. The case was heard upon pleadings and proofs taken in open court, and the bill dismissed.

The claims of the complainants are:

1. That there was no legal consideration for the settlement and discharge of the judgment.

2. That it was fraudulent, and therefore not binding.

3. That it was unreasonable, unjust, and a fraud upon complainants.

4. That Alway had no authority as against complainants to settle and discharge the judgment without the consent of the complainants.

1. Complainants invoke the rule that a payment of a part of a liquidated amount is no consideration for an agreement to release the remainder, but is only a payment *pro tanto*. The rule is conceded. The only dispute is its applicability to the case. Complainants appear to proceed upon the theory that the judgment was conclusive, the amount due determined thereby, that there was nothing to compromise, and that the judgment could only be discharged by payment in full, or its equivalent. The defendants, from the beginning, denied the existence of any such contract as Le Veque & Alway claimed in the suit. There had been no trial upon the merits. A motion for a new trial had been made, and two bonds filed. The bond for $6,000 was in accordance with a stipulation made by the attorneys, but was not filed within the 20 days, but was filed a few days thereafter. The amount of the judgment, and the circumstances under which it was obtained, were such as would appeal strongly to the court to grant a new trial. Besides, other disputed claims between the parties were included in the settlement. The case was a proper one for compromise and settlement, and they will be sustained, unless they were tainted with fraud, or the rights of other parties interfered to prevent.

2. The claim is that McBurney and Alway entered into a fraudulent combination to defraud Le Veque. Alway testified that McBurney paid him $100 to make the settlement for the purpose of defrauding Le Veque out of his interest. McBurney expressly denies this. It is unnecessary to enter into the testimony in detail. I think the circuit judge reached the correct conclusion from the facts as they appear upon this record, and that Alway is unworthy of belief. Unless the testimony of Alway is believed, no case of fraud is established. Alway testified, in regard to taking the $100 from McBurney:

"I did not take it as a bribe, but I took it, as I considered, for signing Le Veque's name to that document. I had already discovered that signing that would not be lawful, according to the best attorney's advice in Mar-

quette; that my signing Le Veque's name was not worth the paper it was written on, as he had made an assignment."

One who confesses that he knowingly entered into a corrupt and fraudulent bargain is not entitled to much credence. The circumstances of the settlement, as stated by Hill and Rood, two reputable attorneys, and Mr. McBurney, show that there was no concealment, and no attempt to defraud, but that the negotiations were open and fair. The judge, in his opinion, says, "Neither Le Veque nor Alway is worthy of belief when contradicted." He saw them upon the stand, and was familiar with the history of this litigation from the beginning. I think there is enough upon the record to justify this conclusion without the benefit of seeing the witnesses and noticing their appearance when testifying,— a matter of no little value when the testimony of witnesses is in direct conflict.

3. Whether the settlement was unreasonable or unjust depends entirely upon the determination of the merits of the controversy between defendants and Le Veque & Alway. These merits are not before us, and it is, therefore, impossible for us to determine them. To hold the settlement unreasonable or unjust would be to hold that Le Veque & Alway had a just claim against defendants for about $6,000,— a claim which they persistently and consistently contested, and which they were so confident of defeating that they gave a bond of $6,000 to pay any judgment that might be rendered against them. It appears that through Mr. Line, their attorney, Le Veque & Alway, during the negotiations for a continuance of the case, offered Mr. Hill to settle this and another claim against defendants for $2,315. The other claim was $588, of which about $500 was conceded. That was, therefore, substantially an offer to settle this claim for $1,727. It does not seem credible that Le Veque & Alway, or either of them, would compromise a valid claim of $6,000 for about $600. It is entirely credible that defendants, who are business men, would pay that amount to avoid expen-

sive litigation.   We must, in the light of these facts, hold that there is no reason for setting the settlement aside as unreasonable or unjust.

4. Had Alway the authority to settle and discharge the judgment?   The judgment was a partnership asset.   It was based upon a declaration alleging partnership, and upon a contract alleged to have been made by and with the partnership.   Whether the partnership, at the time of the settlement, had been dissolved, is immaterial.   The partnership affairs had not been closed and settled. Either partner, in the absence of any agreement to the contrary, and notice to debtors of such an agreement, had power to compound, settle, and receive payment for partnership debts.   The partnership continues for this purpose after dissolution, without any diminution of power.   The dissolution terminates the right to make contracts for the future, but not the right to make contracts in settlement of claims of existing creditors and debtors.   This power must exist in the very nature of the contract of partnership; otherwise, resort must be had to the courts to wind up partnership affairs.   The rule is concisely stated in *Darling* v. *March*, 22 Me. 184:

"The dissolution operates as a revocation of all authority for making new contracts.   It does not revoke the authority to arrange, liquidate, settle, and pay those before created."

See, also, T. Pars. Partn. pp. 386, 392; 2 Bates, Partn. §§ 681, 682; and also authorities there cited.

No notice had been given by complainants of their claimed assignments until after the agreement of settlement had been made.   The agreement, being valid when made, could not be avoided by a subsequent notice of these assignments.   The settlement did not relate to future contracts by the firm, but to a past partnership transaction.   It is not within the principle of *Griswold* v. *Waddington*, 16 Johns. 491, and other similar cases cited by the learned counsel for complainants.   In that case the partners were citizens of different countries, between

which a war had arisen. It was held that the existence of a war dissolved the partnership as to future contracts, but that the partnership continued as to past contracts. The court said:

"The parties were still partners as to those goods which had been actually purchased by them before the war; and the parties, as partners,' were bound to account to each other for the proceeds of those goods, and equally bound, as partners, to pay for them, if not already paid for. A dissolution of a partnership only has respect to the future. The parties remain bound for all antecedent engagements. The partnership may be said to continue as to everything that is past, and until all pre-existing matters are wound up and settled. * * * With regard to things past, the partnership continues, and always must continue."

It may be said of the arrangement with Packard and Pauli that it gave them no control over the suit or the judgment, and no right to interfere, or to receive any money, until the amount had been settled, either by a judgment beyond the control of the court and of the parties or by a compromise. The assignment to Mrs. Line did not make her a partner with Alway, or entitle her to a half of the judgment. Under it she was entitled to receive only what remained after the partnership was settled, and it was determined what portion of the judgment would have belonged to Le Veque. A mortgagee or assignee of a partner's interest can receive only his share of the surplus after the partnership is wound up. 1 Bates, Partn. § 183; *Fourth Nat. Bank of New York* v. *Railroad Co.*, 11 Wall. 624; *Lovejoy* v. *Bowers*, 11 N. H. 404; *Rosenstiel* v. *Gray*, 112 Ill. 282; *Hutchinson* v. *Dubois*, 45 Mich. 143 (7 N. W. 714); *Kunze* v. *Cox*, 113 Mich. 546 (71 N. W. 864, 67 Am. St. Rep. 480). An assignment by one partner of all his interest in the firm dissolves the partnership, and all that such assignee is entitled to is what remains after the credits have been collected, the debts paid, and the remaining assets are ready for distribution. The assignment gives him no right to interfere with the management of the business by the remain-

ing partners, unless such partners are fraudulently conducting it. The same rule applies where the partner has assigned his interest in a single partnership asset. It follows that Alway was the only one who was authorized to settle this claim. It is conceded by counsel for defendants that Alway was bound to act in good faith, and that fraud on his part would have vitiated the settlement.

The bill does not seek to enforce a lien of complainants upon the amount of the settlement. If this were so, a different question would arise. We are not prepared to hold that the owner of a judgment may not give several parties a lien upon that judgment to secure their claims, which might be enforced in a court of equity, as was done in *Moore's Appeal*, 92 Pa. St. 309. It is not necessary to express an opinion upon this question.

The decree should be affirmed.

MONTGOMERY, C. J. I cannot agree with the conclusion reached by my Brother GRANT. There is no doubt of the fact of the assignment by Le Veque of his interest in the judgment to the complainant Line. It does not appear that any creditor is complaining, and it does appear that Le Veque's copartner, Alway, assented to this assignment. In what manner, then, the assignment works any injury to the judgment debtor, I am unable to see, unless it be true, as contended, that an assignment of a portion of a judgment is of no effect, either in law or equity, as against the judgment debtor. I do not understand this to be the rule. It is true that it has been held in some jurisdictions that at law an assignment of a portion of a judgment is wholly ineffectual. In Missouri it seems to have been held that it is equally ineffectual in equity. See *Love* v. *Fairfield*, 13 Mo. 300 (53 Am. Dec. 148), and *Burnett* v. *Crandall*, 63 Mo. 410. But elsewhere the rule seems to be firmly established that an assignment of a portion of a claim is good in equity, and creates at least a trust in favor of the equitable assignee;

or, as is said by the supreme court of Ohio in *Pittsburg, etc., R. Co.* v. *Volkert*, 58 Ohio St. 362 (50 N. E. 924):

"Whatever term is applied to it [the assignment] by way of description, the result reached is to give to the assignee a property right in the thing assigned,—a right which is cognizable by and enforceable in a court of equity."

In the case last cited it was distinctly held that, after an assignment of a portion of a demand or judgment, the debtor, having notice of the assignment, could not discharge the entire demand, so as to cut off the rights of the assignee. See, also, *North Chicago St. R. Co.* v. *Ackley*, 58 Ill. App. 572; *Moore* v. *Robinson*, 35 Ark. 293; *Beers* v. *Hendrickson*, 45 N. Y. 665.

In my opinion, the previous decisions of this court in principle decide the present case. See *Weeks* v. *Wayne Circuit Judges*, 73 Mich. 256 (41 N. W. 269); *Potter* v. *Hunt*, 68 Mich. 242 (36 N. W. 58). It is suggested that the Michigan cases are cases in which an attorney's lien has been enforced; but this is not the ground upon which they rest. In *Weeks* v. *Wayne Circuit Judges* it was held that the agreement between the attorneys and their client operated as an assignment of the judgment to the extent of the attorneys' claims. It was further held that the plaintiff could give no valid discharge of the judgment until the attorneys' claims were paid; and it was said:

"It is true, courts, as a rule, look with favor upon a compromise and settlement made by the parties to a suit, with the consent of all persons concerned, to prevent the vexation and expense of further litigation; but the rule only applies where the rights and interests of all parties concerned, both legal and equitable, have all been respected."

In my judgment, complainants are entitled to relief in this case. The decree will be reversed and remanded to take an account of the value of complainants' interest in the claim represented by the judgment, but with leave to defendants, McCall and McBurney, to apply for a new

trial of the case at law; and the relief granted is conditioned upon the complainants' assent to the reinstatement of the motion for new trial made in the suit at law.  Proceedings in this case will be stayed until the disposition of that motion.   Complainants will recover costs of this court.

HOOKER, MOORE, and LONG, JJ., concurred with MONTGOMERY, C. J.