Argued March 16, decided May 25, modified on rehearing August 17, further rehearing denied October 5, 1909.

## ALEXANDER *v.* MUNROE.

[101 Pac. 903; 103 Pac. 514.]

ATTORNEY AND CLIENT—COMPENSATION—PROTECTION OF LIEN—REMEDY.

1. The remedy of an attorney receiving from his client, who had obtained a judgment against a third person for a specified sum, and who had instituted a suit to subject real estate to the payment of the judgment, a half interest in the judgment and in the security therefor claimed in the pending suit, is only in equity on his ceasing to represent the client and on the client satisfying the judgment pursuant to a fraudulent settlement with the third person.

LIS PENDENS—SUIT BY ASSIGNEE OF JUDGMENT—EFFECT.

2. A suit by an assignee of a half interest in a judgment and in real estate sought to be subjected to the payment of the judgment in a pending creditor's suit, to protect his rights as against a fraudulent settlement entered into between the assignor and the judgment debtor stipulating for the cancellation of the original judgment and of the decree in the creditor's suit subjecting real estate to the payment of the original judgment, brought within the life of the original judgment, is *lis pendens* and keeps alive the equitable lien, and a decree establishing his rights may be rendered after the judgment has ceased to be a lien on the real estate.

JUDGMENT—ASSIGNMENTS—EFFECT AS TRANSFERRING PERSONAL LIABILITY OF JUDGMENT DEBTOR.

3. An assignment of a part of a judgment adjudicating the personal liability of the judgment debtor, transfers to the assignee a portion of such personal liability.

JUDGMENT—LIEN—REMEDIES AFTER TERMINATION.

4. A judgment creditor assigned a half interest in the judgment and in real estate sought to be subjected to the payment of the judgment by a pending creditor's suit. Thereafter the judgment creditor obtained a decree subjecting the real estate to the judgment, and thereafter he and the judgment debtor, in fraud of the assignee, settled the litigation. The assignee, before the filing of the cancellation of the judgment and during the life of the judgment, sued to enjoin the filing thereof and to secure his interest in

the real estate. Pending that suit, a suit to foreclose a mortgage on the real estate was brought, and the assignee filed a cross-bill seeking to enforce his interests under the assignment. *Held*, that the right of the assignee to enforce his portion of the judgment as a lien on the land was not affected by the fact that execution had not issued on the judgment within ten years from the rendition thereof at the time of the institution of the foreclosure suit; but his rights depended on a new decree, which must be rendered pursuant to his cross-bill, reserving to him his rights as they existed at the time of the fraudulent settlement.

JUDGMENT—LIEN—COMMENCEMENT.

5. Where a judgment creditor obtained a decree against the judgment debtor and his grantees, setting aside deeds of lands and subjecting the same to the payment of the judgment, the lien of the decree ran from the time it became final, and lapse of time from the entry of the judment did not operate to cancel it.

JUDGMENT—PARTIAL ASSIGNMENT—EFFECT.

6. A partial assignment of a judgment without the consent of the judgment debtor is not enforceable at law, but operates as an equitable assignment, and the judgment debtor, having knowledge of the assignment, cannot settle with the judgment creditor to the prejudice of the assignee.

ELECTION OF REMEDIES—EFFECT—REMEDIES BARRED.

7. The fact that an assignee of a part of a judgment, commenced an attachment against the judgment creditor to attach the sum paid by the judgment debtor in consideration of a settlement of the judgment, pursuant to an agreement between the judgment creditor and judgment debtor, does not estop the assignee from instituting a suit to enforce his rights against real estate made subject to the payment of the judgment; the judgment debtor not having been misled or caused to act to his injury.

LIMITATION OF ACTIONS—PLEADING AS DEFENSE—NECESSITY.

8. The defense of limitations, if not taken by demurrer or answer, is waived.

APPEAL AND ERROR—PRESENTATION OF DEFENSE BELOW—LIMITATIONS.

9. Where a mortgage foreclosure trial proceeded until the close of the mortgagee's case without raising the issue of limitations, and the mortgagor's liability was conceded, the defense of limitations was waived, and an answer subsequently filed without leave of court, setting up the defense of limitations, must be disregarded on appeal, though a motion to strike out the answer was not allowed

BILLS AND NOTES—CONSIDERATION—PRIMA FACIE EVIDENCE.

10. A note itself is *prima facie* evidence of the consideration therefor.

MORTGAGES—FORECLOSURE—PERSONAL JUDGMENT.

11. Where the decree in a creditors' suit was not intended to operate as a personal judgment against the fraudulent grantor, but only as a determination of the amount due interveners to settle the extent of the liability of the property involved therein, intervenors were not entitled to a personal judgment against such fraudulent grantor in a subsequent suit to foreclose a mortgage on the property.

JUDGMENT—PAYMENT—PRESUMPTION—EQUITABLE EXECUTION.

12. A creditors' suit, commenced during the life of a judgment, to subject property to the payment thereof, not available by execution at law, operates as an equitable execution sufficient to suspend limitations under Section 241, B. & C. Comp., providing that, after the lapse of ten years without an execution, a judgment shall be conclusively presumed to be paid.

From Washington: THOMAS A. MCBRIDE, Judge.

Suit by Jessie Alexander against Edith Munroe and others, in which Zera Snow and others filed cross-bills, to enforce a partial assignment of a judgment and to foreclose mortgages. From a judgment granting relief as prayed for in the cross-bills, defendant, Edith Munroe, appeals.

Statement by MR. JUSTICE EAKIN.

Jackson Munroe, in a divorce suit against defendant, Edith Munroe, besides the decree of divorce, recovered a judgment for the sum of $1,487, rendered July 21, 1891. Pending that suit, Edith Munroe conveyed to her mother, Margaret Vedder, and another, in fraud of Jackson Munroe, the real estate involved here, and on August 4, 1891, Jackson Munroe brought a creditor's suit against them to cancel such conveyances and subject the property to the payment of his judgment. The latter suit resulted in a decree, July 19, 1894, in favor of Jackson Munroe, for the recovery of the amount of the original decree and interest, $2,465.05, and adjudging the deeds void as to him, and subjecting the property to the payment of the judgment; and that it is a lien on such real property, namely, beginning at the southwest corner of the donation land claim of D. B. Dustin, in Washington County, Oregon, and running thence north 140 rods, thence east 91 5-14 rods, thence south 140 rods, and thence west to the place of beginning.

Thomas H. Tongue, now deceased, represented Edith Munroe, as her attorney, in all of the litigation, and until the year 1896, Zera Snow and S. B. Huston were counsel for Jackson Munroe therein. Pending such litigation, and subsequent to the decree in the divorce suit, Jackson Munroe duly assigned to Huston and Snow one half of the judgment in the divorce suit, in the following words:

"Whereas, the undersigned, Jackson Munroe, was defendant in a divorce suit brought against Mr. Munroe

in the Washington County Circuit Court by a decree in which, after an appeal to the supreme court of the State and a direction therefor, there was decreed to said Jackson Munroe the payment of certain moneys. And whereas, there is now pending by the said Jackson Munroe against Edith Munroe and others in the said circuit court for the county of Washington a suit to charge upon certain landed premises, as a lien, the said moneys decreed to the said Jackson Munroe, the said landed premises consisting of the following described property, towit: Commencing at the southwest corner of the donation land claim of D. B. Dustin; running thence north 140 rods; thence east 91 5-14 rods; thence south 140 rods; thence west to the place of beginning, containing 80 acres.

"Now in consideration of legal services rendered by W. B. Gilbert, Zera Snow, and S. B. Huston, and in consideration of future services to be rendered in the said cause last above named, I, Jackson Munroe, do hereby assign and transfer to Zera Snow and S. B. Huston one half of my claim embraced and determined by the divorce suit above mentioned, and embraced in the suit last above named, pending in Washington County, together with an undivided half interest in the security therefor now claimed upon the landed premises above described, together with an undivided half interest in the said landed premises. And it is understood likewise that in the event that there shall be any advance made by the parties to whom this transfer is made, or either of them, an account of the same shall be kept and the same shall be chargeable against my remaining interest in the said claim and premises. Executed in triplicate. Dated at Port'and, Oregon, December 31, 1892. Witness my hand and seal.                                              Jackson Munroe.
[Seal.]        Executed in the presence of Olive A. Jenner."

Afterwards on June 20, 1896, Jackson Munroe and Edith Munroe, in consideration of $500 paid by Edith to Jackson, compromised the subject of the litigation, and Jackson executed to Edith a cancellation of the judgments and decrees, and also a quitclaim deed to the property, at which time the second suit was pending upon appeal in the supreme court, and, as part of the agreement of settlement, the appeal was dismissed; but before

the cancellation of the decrees was filed, July 6, 1896, Snow and Huston commenced a suit against Jackson and Edith Munroe *et al.* to enjoin the filing thereof and to secure their interest in the decree on the ground that such settlement was executed and taken by Edith Munroe with full knowledge on her part that Snow and Huston were the owners and equitable assignees of one half thereof, and of the lien securing the same; and that such cancellation and deed were executed by collusion and conspiracy, between Jackson and Edith Munroe, for the purpose of defrauding Snow and Huston of their rights in the decree, which suit is still pending.

At the time the cancellation of said decrees was executed, July 20, 1896, Thomas H. Tongue furnished $500 to Edith Munroe with which to pay Jackson Munroe the amount of said settlement and took a mortgage from her in the sum of $1,000, upon the land in question, to secure the sum so advanced and his attorney fees. He also held, at that time, another mortgage upon the same property, executed May 20, 1893, securing the sum of $275.

The present suit was commenced December 8, 1904, by Jessie Alexander against Edith Munroe, appellant, Jackson Munroe, Zera Snow, S. B. Huston and E. B. Tongue, administrator of the estate of Thomas H. Tongue, deceased, *et al.*, to foreclose a mortgage executed for his benefit by Mrs. Vedder prior to the commencement of this litigation, and in regard to which there is no controversy here. The issues arise upon the cross-bills of Snow and Huston and E. B. Tongue, administrator, against Edith Munroe *et al.* Snow and Huston by their cross-bill seek to enforce against Edith Munroe and the property, through the decrees, the equitable assignment to them by Jackson Munroe of a half interest in such decrees, which cross-bill recites the facts above set forth.

In the answer of Edith Munroe to the cross-bill of Snow and Huston, she pleads: That, no execution having

issued on the decree of July 21, 1891, their claim against her is barred by limitation, and that they have no interest in any judgment against her on which execution has issued within 10 years prior to the commencement of this suit; that she is not personally liable to them; and that the judgments are satisfied by her settlement with Jackson Munroe. She also pleads that Snow and Huston are, and ought to be, estopped from claiming any lien in the judgments, because after the cancellation thereof on July 6, 1896, they, with full knowledge of all the facts, commenced an attachment suit against Jackson Munroe for the amount of their claim, for the purpose of attaching the $500 paid to him in the settlement on June 20, 1896. The attachment suit is admitted by Snow and Huston, but they deny that it was with knowledge of the facts, and aver that it was commenced at the request of Edith Munroe and for her benefit, and was dismissed long before the commencement of this suit.

Snow and Huston, in their reply, by way of estoppel, say that Edith Munroe is and should be estopped from claiming the statute of limitations, because she prevented and refused to permit the clerk to issue execution on said judgment when directed by Snow and Huston within the period of limitation. The defendant, E. B. Tongue, administrator, by his cross-complaint, seeks to foreclose the two mortgages held by him against Edith Munroe upon the property; the first one being for the sum of $275, dated May 20, 1893, with an alleged credit thereon of $75, dated September, 1903, and the second one being dated June 11, 1896, for the sum of $1,000. By an answer filed after the trial, January 13, 1906, Edith Munroe pleads the bar of statute of limitations to the first of these mortgages, denies the credit of $75 thereon, and alleges that the second mortgage was without consideration. The pleadings make some issues between Snow and Huston and Tongue, but their differences have been stipulated and require no consideration. The pleadings

in the case are quite lengthy, but we think this statement will sufficiently disclose the points involved here.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Edward B. Watson.*

For plaintiff and respondent there was a brief over the names of *Messrs. Caples & Allen.*

For defendants and respondents there was a brief over the names of *Mr. Wallace McCamant, Mr. Zera Snow, Mr. Samuel B. Huston, Mr. Frank F. Freeman* and *Mr. Thomas H. Tongue, Jr.,* with oral arguments by *Mr. Huston* and *Mr. Tongue.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Considering first the cross-bill of Snow and Huston, the most important question is whether, by reason of the fact that no execution issued within 10 years after the rendition of the decrees in favor of Jackson Munroe, Snow and Huston are without remedy against the property of Edith Munroe. After Snow and Huston ceased to represent Jackson Munroe, which at the latest was July 6, 1896, when they brought their suit against him and others, their authority, as his attorneys, to issue execution thereon, was at an end, and, not being parties to the decree, they had power to act only in the name, and by the authority of Jackson Munroe, who, by the satisfactions he had executed, had already put it beyond his power to direct or authorize execution to issue. Therefore, on July 6, 1896, the only remedy of Snow and Huston was in a court of equity.

2. The attempted settlement of the judgments by collusion, between Edith and Jackson Munroe, with full knowledge of the rights of Snow and Huston, which put it out of their power to keep the judgments alive, was a fraud upon them, and the commencement of the suit by them on July 6, 1896, to protect their rights, being

within the life of the two decrees, was *lis pendens,* and kept alive their equitable lien. It is held in *Davidson* v. *Burke,* 143 Ill. 139 (32 N. E. 514: 36 Am. St. Rep. 367), that a judgment creditor having brought a creditor's suit to uncover property fraudulently conveyed by the judgment debtor, although the creditor's judgment was barred by the statute of limitations at the time of final decree, yet, when he exhibited his bill in chancery to impeach the conveyance, the *lis pendens* was an equitable levy and created an equitable lien on the lands, and it was wholly unimportant that the final decree, establishing the lien, was not rendered until long after the judgment at law had ceased to be a lien upon the property of the creditor. To the same effect is *Cincinnati* v. *Hafer,* 49 Ohio St. 60 (30 N. E. 197). *Dempsey* v. *Bush,* 18 Ohio St. 376, is quite in point. A creditor obtained judgment against a debtor and his sureties. The sureties paid the judgment to relieve their own property from the lien. A mortgagee of the property, under a mortgage taken after entry of the judgment, but before its payment, brought suit, after payment, to foreclose his mortgage, making the sureties in the judgment parties. They set up their rights under the judgment as equitable assignees of it, claiming priority over the mortgage, and it was held that their rights under the judgment were prior and superior to the mortgage, notwithstanding the judgment became dormant pending the litigation, as the sureties had no remedy by execution and had set up their equities in the foreclosure suit (in which the securities were marshaled) while their judgment was alive, and that their rights were preserved.

3. It is urged by counsel for Edith Munroe that she is not personally liable to Snow and Huston; but the original debt was her debt, and the assignment to Snow and Huston transferred to them a portion of that personal liability, which carries with it a like portion of the security

through the judgment, but only enforceable in Snow and Huston's favor in equity.

4. It was the fraud and collusion of Edith Munroe with Jackson Munroe that put it beyond Snow and Huston's power to enforce their equity in the judgment, and their suit, brought within the life of the judgment, to prevent its cancellation and subject the property to the payment cf their claim, and to establish and declare their interest therein, was in the nature of a proceeding to enforce their interest therein, and operates to suspend the running of the statute pending such proceeding. Pending that suit the present suit to marshal the securities was commenced and their rights set up herein, reciting the former suit and consolidating the same with the cross-bill in this suit. Their rights therefore depend upon a new decree to be rendered in this proceeding, which may reserve their rights as they existed on June 20, 1896, and they are not affected by the fact that execution had not issued on the decree of July 21, 1891, within 10 years from the rendition thereof: 3 Freeman, Ex. § 434.

5. The purpose of the suit commenced by Jackson against Edith Munroe et al., which resulted in the second decree was to avoid certain deeds and subject this real property to the payment of plaintiff's claim, and it was adjudged and decreed thereby that plaintiff have and recover, from defendant Edith Munroe, $2,465.05, the same being the amount of a money decree, interest, and costs, entered on July 21, 1891, and adjudged and decreed said sum, now found due, to be a lien upon said property, and providing for process to enforce said decree after 10 days from date thereof. Counsel for Edith Munroe contends that the commencement of that suit did not interrupt or suspend the running of the statute of limitations as to the first decree. Without deciding that question, so far as it relates to the decree of July 21, 1891, the lien of the decree of July 19, 1894, will run from the time it became final, and lapse of time from entry of the decree

of July 21, 1891, cannot operate to cancel the latter.    So far as this particular property is concerned, against which the second decree operates, it may be enforced by process issued thereon.    The decree was entered by the circuit court on July 19, 1894, but defendant appealed therefrom and gave an undertaking for stay of proceeding pending the appeal, and the period of limitations did not begin to run against that decree until it became final. The decree of the circuit court did not become final until the appeal therefrom was dismissed in the supreme court, which was not earlier than June 20, 1896, and in that case the statute had not run against the second decree at the time Snow and Huston filed their cross-bill in this suit, December 30, 1904: 1 Freeman, Ex. § 28.

6. Counsel for Edith Munroe contends that a partial assignment of the judgment does not bind the debtor or curtail her right to deal with the judgment creditor in relation to the judgment.    Although a partial assignment of the judgment cannot be made without her consent to be enforceable at law, yet it operates as an equitable assignment thereof, and if the judgment debtor is aware of the transfer she cannot settle with the judgment creditor to the prejudice of the assignee: *Little* v. *City of Portland,* 26 Or. 235-242 (37 Pac. 911).    It is held in *P. C. C. R. R. Co.* v. *Volkert,* 58 Ohio St. 363 (50 N. E. 924), that an assignment to an attorney of a half interest in the judgment obtained by him for his services in procuring it, conveys a property right in the judgment, and, although it is not enforceable at law, it is in equity, and it is not in the power of the judgment debtor, after knowledge thereof, to compromise the judgment with the creditor alone, and thus defeat the assignee.    To the same effect are *Friendly* v. *Lee,* 20 Or. 202 (25 Pac. 396) ; *Line* v. *McCall,* 126 Mich. 497 (85 N. W. 1089) ; *Weeks* v. *Circuit Judges,* 73 Mich. 256 (41 N. W. 269) ; *Phillips* v. *Edsall,* 127 Ill. 535 (20 N. E. 801).    And in *Warren* v. *Bank of Columbus,* 149 Ill. 9, 24 (38 N. E. 122: 25

L. R. A. 746), it is further held that an equitable assignment will not only reach the fund in the hands of the original depositary, but follow it or its proceeds in the hands of any one receiving it with notice. To the same effect is *Dowell* v. *Cardwell*, 4 Saw. 217 (Fed. Cas. No. 4,039).

7. We find from the preponderance of the evidence that Edith Munroe, at the time she made the settlement with Jackson Munroe and procured from him the cancellation of the two decrees, had notice that Jackson Munroe had assigned to Snow and Huston one-half of the recovery in the decree of July 21, 1891, together with an undivided half interest in the security therefor in the lands involved in the second suit. The record in the attachment action is not before us, but there is no element of estoppel involved or pleaded in connection with the bringing of the attachment action by Snow and Huston. The attachment might have been dissolved had the writ been attacked on the ground that Snow and Huston held security for the debt, but the attempt to attach constitutes no representation or conduct by Snow and Huston that misled or caused Edith Munroe to act to her injury in relation thereto.

8. As to the claim of defendant E. B. Tongue, administrator, the first important question is whether the note and mortgage of date May 20, 1893, for $275, was barred by the statute of limitations at the time of the commencement of this proceeding. The answer and cross-bill of Tongue, by which the note and mortgage are set up in this suit, filed August 2, 1905, is the commencement of the suit, so far as these mortgages are concerned, and if the mortgage was not renewed it would have been barred by the statute of limitations if taken advantage of by Edith Munroe; but the defense of the statute of limitations, if not taken by demurrer or answer, is waived: *Davis* v. *Davis*, 20 Or. 78 (25 Pac. 140). The first answer of Edith Munroe in this suit, referring to these

two mortgages, admits her liability thereon in the sum of $1,424, which, according to her testimony, includes the amount of the first mortgage, for which sum she agrees that said estate shall have decree in this suit and prays the court to determine the amount due from defendant to the estate of T. H. Tongue, deceased, which may be a lien on said property.

9. The trial of the suit was had before the judge on December 28, 1905, without any other answer on the part of Edith Munroe to the cross-bill of Tongue, at which trial Tongue identified and offered in evidence the notes and mortgages, to which defendant stated she had no objection, and they were received. At the close of the evidence on the part of Tongue, defendant Edith Munroe moved the court for a decree against the Tongue estate that no greater sum be entered in his favor than $1,425, with interest. The answer, setting up the defense of the statute of limitations, was not filed until after the completion of the trial and submission of the cause. There was a motion and affidavit filed in the lower court by Tongue to strike out this answer; but we find no ruling on the motion in the record, although counsel for Tongue claim it was allowed and the answer stricken out. However, in view of the fact that the trial proceeded, at least until the close of Tongue's case in chief, without raising that issue, and Edith Munroe's liability being conceded, that defense must be deemed waived, and, if the motion to strike out the answer was not allowed, still, as it was filed after default and apparently without leave of the court, it will be disregarded here.

10. The only remaining question relating to the claim of the Tongue estate is as to the amount due upon the $1,000 mortgage. It is conceded that $500 of that mortgage was cash, loaned to Edith Munroe to pay Jackson Munroe upon the settlement, and Tongue contends that the remainder thereof was for his attorney fees in this litigation. Her counsel contends that there could not

have been $500 attorney fees due Thomas H. Tongue at the time of the execution of the mortgage, insisting that the $275 mortgage was for attorney fees to the date thereof; but that mortgage was executed more than a year before the close of the second suit, and we do not find that any witness in the case testified that it was given for attorney fees. Edith Munroe does not mention the consideration for it and makes no claim that it was for attorney fees. On the contrary, she replies, when asked about the payment of attorney fees to Tongue, prior to the execution of the $1,000 mortgage: "I had already paid Mr. Tongue different sums, at different times. At different times, I do not remember dates." She said she could not give any amounts or dates, and the statements of Thomas H. Tongue, deceased, were proved to the effect that the $1,000 mortgage included $500 attorney fees. This mortgage was executed on June 11, 1896, and Edith Munroe admits that for nine years she did not mention to Tongue that it was given for more than was due him. She says she was waiting until final settlement. Her letter of May 3, 1899, three years after the date of the note, in which she promises to raise the amount of interest due, makes no suggestion of error, and practically acknowledges liability for the mortgage. The note itself is *prima facie* evidence of the consideration, and the statements of Edith Munroe do not convince us that the consideration was less than its face value, and we find no error in the findings of the court in relation thereto.

The decree is affirmed.       AFFIRMED.

---

Modified August 17; further rehearing denied October 5, 1909.
## ON PETITION FOR REHEARING.

[103 Pac. 514.]

MR. JUSTICE EAKIN delivered the opinion of the court.

11. Counsel for defendant, Edith Munroe, urges that the decree of the lower court is erroneous to the extent

that it includes a personal judgment against her for the sum of $2,357.45 due Huston & Snow. As the whole relief sought by Huston & Snow grows out of the decree in the creditors' suit, of date July 19, 1894, and. as the decree in that suit was evidently not intended to operate as a personal judgment against Edith Munroe, but only a determination of the amount due, for the purpose of settling the extent of the liability of the property involved therein, it does not justify a personal judgment in this suit against Edith Munroe in favor of Huston & Snow, other than to fix the amount for which the property is liable, and it should not operate as a deficiency judgment.

12. Counsel again urges that, the 10 years' limitation having elapsed since entry of the decree of 1891, the decree is conclusively presumed to be paid, and therefore cannot be the basis for any relief. The effect of that statute (Section 241, B. & C. Comp.) is that, after the lapse of 10 years without an execution being issued, the judgment shall be conclusively presumed to be paid. In *Bowman* v. *Holman,* 53 Or. 456 (99 Pac. 424), this court held that the effect thereof takes away the right as well as the remedy that theretofore existed; but in this case a creditors' suit was commenced within the life of the judgment, which, so far as the property involved is concerned, is a suit on the former judgment, and, being within the necessity recognized as sufficient to justify a suit on a judgment in *Pitzer* v. *Russel,* 4 Or. 124, necessarily renews it, at least as against this particular property.

This suit was brought to reach assets not available by an execution at law. It is in the nature of an equitable execution, or equitable relief which is granted on the ground that there is no remedy at law. It is taking out of the way a hindrance which prevents the execution at law, in effect a substitute for an execution: *In re Shephard,* 43 Ch. Div. 131; *In re Craig & Leslie,* 18 Ont. Pr.

54 OR.—— 17

270; *Hatch* v. *Van Dervoort,* 54 N. J. Eq. 511 (34 Atl. 938) ; *Hunt* v. *Wolfe,* 2 Daly (N. Y.) 298, 303; High, Receivers, § 2. These authorities refer particularly to the proceeding by a receiver as constituting an equitable execution, in which the court takes the property and applies it to the payment of the judgment (High, Receivers, § 2) ; and the process and relief in a creditors' suit come equally within the principle, and prevent the statute from running, at least as to the particular property involved. To the same effect are the Illinois and Ohio cases cited in the opinion.

The decree will be modified to the extent of denying the deficiency judgment.

AFFIRMED: MODIFIED: FURTHER REHEARING DENIED.

MR. JUSTICE MCBRIDE, having heard this case in the lower court, took no part in this decision.