Argued and submitted July 26, reversed and remanded December 15, 1982

MCCALLUMS, INC.,
*Respondent,*
*v.*
MOUNTAIN TITLE CO.,
*Third Party Plaintiff - Appellant.*

(79-782-L, CA A22395)
654 P2d 1157

John Svoboda, Springfield, argued the cause for Third Party Plaintiff - Appellant. With him on the brief was Wiswall, Svoboda, Thorp & Dennett, P.C., Springfield.

Penny Lee Austin, Medford, argued the cause for respondent. With her on the brief were William H. Ferguson, and Grant, Ferguson & Carter, Medford.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

Thornton, J., concurring in part; dissenting in part.

## RICHARDSON, P. J.

Plaintiff brought this action against defendant Mountain Title Co., alleging generally that Paul F. and Pat Howell had assigned to plaintiff certain proceeds from the prospective sale of the Howells' house, that defendant had notice of the assignment, that the proceeds were in defendant's possession and that defendant had wrongfully delivered the proceeds to the Howells rather than to plaintiff. The trial court granted summary judgment for plaintiff. Defendant appeals, assigning error to the granting of plaintiff's motion for summary judgment and the denial of defendant's motion.[1]

In 1978, the Howells engaged Frankie Gates dba North Star Realty (Gates) to act as the real estate agent for the sale of their residence. The Howells then purchased a mobile home from plaintiff and, as partial consideration, executed the following assignment:

"August 23, 1978

"TO: NORTH STAR REALTY, Rogue River, Oregon

"ASSIGNMENT

"I, PAUL F. HOWELL and PAT HOWELL, hereby irrevocably assign to [plaintiff] the sum of $6,900 now due or hereafter due me from the proceeds of the sale of our home to *Darwin and Delores Grantham* and I hereby authorize NORTH STAR REALTY to pay to [plaintiff] such sum directly at such time as the above-mentioned

---

[1] Plaintiff also joined Frankie Gates, dba North Star Realty, as a defendant. Mountain Title and Gates brought a third-party action against the Howells. Unless otherwise noted, the term "defendant" in this opinion refers to Mountain Title.

Plaintiff's action against Gates has been dismissed, and there is no remaining controversy between Gates and the Howells. Our understanding of the record is that, at the time judgment was entered in plaintiff's favor against Mountain Title, there was no final judgment in the third-party action between Mountain Title and the Howells. The trial judge certified the judgment appealed from as final, *see* ORCP 67B, ORS 19.010(2)(e), but did not offer reasons why he considered there to be no just reason for delaying entry of a final judgment pending the conclusion of the third party action. *See Portland Elec. & Plumb. v. Cooke,* 51 Or App 555, 626 P2d 397, *rev den* 291 Or 117 (1981). Because we conclude that the court erred in granting summary judgment, we consider that the parties and the trial court would be better assisted by our addressing the merits rather than by deciding this appeal on the issue of whether the court correctly certified the judgment for interlocutory appeal.

transaction is closed and the funds are ready for disbursement."

The contemplated sale to Mr. and Mrs. Grantham was not consummated. However, Mr. and Mrs. Rivas subsequently agreed to purchase the Howells' residence, and in October, 1978, defendant was engaged as the escrow agent for the transaction. A copy of the assignment was transmitted to defendant by plaintiff on November 21, 1978.

Disagreements arose between plaintiff and the Howells regarding the mobile home. By letter of December 8, 1978, the Howells' attorney told Gates that she was "no longer authorized to disburse funds pursuant" to the assignment. A copy of the letter was sent to plaintiff. On December 21, Mr. Howell sent a similar letter to defendant. On December 6, the Howells executed escrow instructions, which did not provide for disbursement of proceeds to plaintiff. Supplemental instructions from Mr. Howell to defendant were communicated in a second letter dated December 21. The supplemental instructions also contained no provision for disbursement of funds to plaintiff.

According to the affidavit of one of plaintiff's attorneys:

"* * * On or about December 18, 1978, I contacted Mountain Title Company by telephone and spoke with the person handling the Howell escrow and was told by that person that Mountain Title Company had the Assignment and that they planned to honor the Assignment and send the $6,900 to [plaintiff] when they closed the transaction. * * *"

The affidavit further states that a letter of confirmation and follow-up letters were sent to defendant, none of which received a response confirming the conversation. Affidavits of employes of defendant who were involved in the transaction state that the employes recalled no conversation with plaintiff's attorney of the kind described in his affidavit and that such an agreement to honor the assignment would have been contrary to defendant's policy.

On December 26, 1978, defendant delivered $6,039.23 to the account of the Howells and, apparently,

disbursed certain other sums in accordance with the escrow instructions of December 6 and December 21, 1978. No funds were paid by defendant to plaintiff pursuant to the assignment.

In its motion for summary judgment, plaintiff advanced three theories for recovery: (1) that defendant had notice of the assignment and was therefore bound to honor it; (2) that defendant had specifically agreed to honor the assignment; and (3) that because plaintiff had relied to its detriment on defendant's agreement to honor the assignment, defendant is estopped to deny payment. Defendant argues that (1) the assignment did not bind it to deliver a portion of the proceeds of the sale to plaintiff, because it was not a party to the assignment, which was addressed only to Gates; (2) the assignment was superseded by the Howells' subsequent escrow instructions that defendant was legally obligated to follow; (3) the written assignment document designated a transaction that differed from that which occurred; and (4) plaintiff did not plead estoppel; and (5) in any event there was a fact issue whether defendant had agreed to be bound by the assignment.

■ ■  It is not clear on which of those bases the court granted the motion for summary judgment. If the court determined that defendant was bound as an obligor on the assignment because it had notice, the court was in error. It is true, as plaintiff argues, that an obligor on a chose in action who has notice of the assignment of the beneficial interest in the chose in action is liable to the assignee if the obligation is paid other than by the terms of the assignment. *State Farm Ins. v. Pohl,* 255 Or 46, 464 P2d 321 (1970); *Alexander v. Munroe,* 54 Or 500, 101 P 903, 103 P 514 (1909). As these cases illustrate, the duty to honor the assignment falls on the obligor who has notice of the assignment. In essence, the agreed performance of the obligor has been transferred to a third party. However, defendant here is not an obligor. It is merely a depository of the funds to transmit them from the obligor (buyer) to the obligee (sellers), after certain conditions imposed by the buyer and seller have been met. Defendant has no ownership rights in the funds or any duty to dispose of them except by direction of the principals to the escrow agreement. It is simply a conduit for transfer of the

proceeds of the sale from the buyer. Consequently, as a matter of law, defendant was not bound simply because it had notice of the assignment.

■     If the court granted summary judgment on the theory that defendant had agreed to honor the assignment and was therefore bound by its agreement, the court erred. The factual basis of any such agreement was in dispute. Plaintiff submitted an affidavit of one of its attorneys to the effect that he had talked by telephone to an employe of defendant and was assurred that defendant would honor the assignment. The counter-affidavits of defendant's employes raise an issue of fact whether such conversation took place or that any such agreement was made. Because there were issues of fact material to plaintiff's theory of recovery on a contract basis, the motion for summary judgment was not appropriate. ORCP 47C; *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978).

Plaintiff's final ground for summary judgment was that defendant was estopped to refuse payment of the assigned amount to plaintiff because plaintiff had relied to its detriment on the agreement to honor the assignment. Defendant contends that this theory of estoppel was not pleaded and could not be a basis for the imposition of liability. It also argues that there is a dispute of fact as to whether there was an agreement, which is a necessary predicate to plaintiff's estoppel theory. The affidavits submitted by the parties raise a material issue of fact that cannot be resolved by a ruling on a motion for summary judgment.[2]

In summary, we hold that as a matter of law defendant was not liable as an obligor who had notice of the assignment. There are factual and pleading issues to be resolved regarding the other theories of liability. The court erred in granting the motion for summary judgment on any of the three bases advanced by plaintiff.

Reversed and remanded.

---

[2] Because we remand for further proceedings regarding plaintiff's contract and estoppel theories, we do not address the question whether estoppel could be a basis for imposing liability on the assignment or whether it could be asserted under the current state of the pleadings.

**THORNTON, J.,** concurring in part and dissenting in part.

I disagree with the majority's conclusion that, as a matter of law, defendant cannot be bound by the assignment. The majority cites no authority, and I find none, which answers one way or the other whether a party other than the immediate obligor under an assigned contract or a party who is "merely a depository" or a "conduit" for assigned funds can be responsible for acting in accordance with an assignment of which it has notice.

Language contained in two cases cited by the majority *suggests* that this defendant can be bound by the assignment. In *Alexander v. Munroe,* 54 Or 500, 101 P 903, 103 P 514 (1909), the court said, with respect to *equitable* assignments:

" * * * [A]n equitable assignment will not only reach the fund in the hands of the original depositary, but follow it or its proceeds in the hands of any one receiving it with notice. * * *" 54 Or at 509-10.

In *State Farm Ins. v. Pohl,* 255 Or 46, 50, 464 P2d 321 (1970), the court referred to "third persons" rather than "obligors" in describing those who can be bound by an assignment of which they have notice.

I do not suggest that that language in *Alexander* or *Pohl* is *decisively* inconsistent with the majority's conclusion, although the language surely does not help the majority. However, in the absence of authority which squarely supports the conclusion of the majority, I think the reasons for reaching the opposite conclusion are compelling.

It is true that the buyers of the Howells' house rather than defendant were the direct obligors of the assignment of purchase money from the Howells to plaintiff. But I see no reason why that should relieve this defendant, which had possession of the funds and notice of the assignment, from distributing the funds to the party lawfully entitled to receive them. It is clear that a direct obligor with notice of an absolute assignment is liable to the assignee if the obligor acts in accordance with a purported revocation of the assignment by the assignor. *See* 4 Corbin, Contracts, §§ 890, 891 (1951). I am at a loss to understand why a party whose relationship and ultimate

claim to assigned funds in its possession is exactly the same as the obligor's — save for the fact that the party's original responsibility is to transmit rather than make the payment — should be any the less accountable for wilfully or negligently participating in the assignor's conversion of the funds.

The majority states that defendant had no duty "to dispose of [the funds] except by direction of the principals to the escrow agreement." (Slip opinion at 4.) If by that statement the majority means that defendant's status as an escrow agent relieves it of liability to which it would otherwise be subject, I strongly disagree. In fact, the instructions of December 6 and December 21, 1978, purporting to require defendant to act inconsistently with the assignment, were executed only by the Howells and not by the purchasers of the house, who were the other principals to the escrow transaction. More fundamentally, those instructions, like the assignment they purported to revoke, did not pertain to the escrow relationship; they related to ultimate distribution of the funds after both principals had satisfied the escrow conditions for distribution and the buyers had no interest whether the funds they paid to defendant were disbursed to plaintiff or to the Howells. As of that time, the assignment was as binding on the Howells and on defendant as if there had never been an escrow — assuming arguendo that the escrow relationship would have affected the parties' obligations under the assignment in the first place. *See Foulkes v. Sengstacken,* 83 Or 118, 128-29, 158 P 952, 163 P 311 (1917); Restatement (Second) Agency, § 14D, comment b (1958).

It is true that, as far as we find, whether defendant *could* be obligated under the assignment is a question of first impression and, as the divergence of views on this court illustrates, the answer is not free from doubt. However, that fact provides no excuse for defendant. Whatever the correct answer may be, defendant should have brought an interpleader action to ascertain what its obligations were, rather than acting in the irresponsible — and, in my view, incorrect — manner it did.

I therefore respectfully dissent from the conclusion of the majority discussed in this opinion. I agree with the

majority's disposition of the other issues, and with its holding that the existence of fact questions made summary judgment inappropriate.