Argued and submitted July 22, 1987, affirmed May 11, 1988

DAVIDSON,
*Appellant,*

*v.*

VALLEY OF THE ROGUE BANK,
*Respondent.*

(85-CV-160; CA A39707)

754 P2d 16

Daniel D. Phillips, Grants Pass, argued the cause for appellant. With him on the briefs was John E. Reade, Grants Pass.

Walter L. Cauble, Grants Pass, argued the cause for respondent. With him on the brief was Schultz, Salisbury & Cauble, Grants Pass.

Before Richardson, Presiding Judge, Joseph, Chief Judge,* and Newman, Judge.

NEWMAN, J.

* Joseph, C. J., *vice* Deits, J.

## NEWMAN, J.

Plaintiff appeals from a judgment for defendant in her action for diversion of funds and breach of fiduciary duty in which she prayed for an "accounting, general damages pursuant to the accounting and punitive damages." We affirm.[1]

In September, 1982, plaintiff sold a tavern to Brolin. The contract of sale (the tavern contract) provided that Brolin agreed to assign his right to one-half of the proceeds collected by Valley of the Rogue Bank (defendant) under three escrow contracts (the escrow contracts) to secure the payment of his obligation to plaintiff under the tavern contract.[2] Plaintiff's attorney prepared, and Brolin signed, a document entitled "Assignment of Proceeds of Escrow" (the instrument):

"[I] do hereby assign and transfer to [plaintiff] the proceeds from the following Valley of the Rogue Bank escrow accounts:

"1.   [Schneider Account]

"2.   [Valerio Account]

"3.   [Bunyan Account].

---

[1] Although plaintiff prayed for punitive damages for breach of fiduciary duty, the parties agreed at trial that they would try the accounting claim to the court first. After that phase of the trial, the court dismissed the complaint and granted judgment to defendant.

[2] The tavern contract provision states:

"Buyer and Seller have agreed that Buyer will pledge to Seller, as security and as a mode of payment, the proceeds from three escrow accounts at Valley of the Rogue Bank. * * * Buyer warrants and represents that he is now the owner and holder of a one-half (1/2) interest in said escrows and has the right to pledge and assign the right to one-half of the proceeds from each of said escrows. This pledge and assignment is given to Seller to secure the payment of the obligation of Buyer to Seller as set forth in paragraph 1.b(2)(b), above, and Buyer shall cause appropriate escrow instructions or other instructions to be given to Valley of the Rogue Bank, the escrow agent, to pay said proceeds to Seller herein through the collection escrow agent named in paragraph 1.b.(3), above. Nothing within this paragraph shall excuse or otherwise modify Buyer's obligations to pay the full amount set forth in paragraph 1., above, according to the schedule set forth, and Buyer and Seller agree that this pledge and assignment has [sic] been made only for purposes of convenience for Buyer in accomplishing such payment.

"Nothing within this pledge and assignment shall cause Seller to assume any of Buyer's obligations in said escrows or the underlying transactions, and Seller shall have no obligation or duty to perform in any manner regarding the transactions in escrow, including but not limited to instituting foreclosure, but instead, Buyer shall retain such duties and obligations."

"This assignment includes all payments due under said escrow accounts, including both principal and interest.

"The undersigned does hereby direct [defendant] to pay the proceeds from the above referenced escrows to [plaintiff] as she shall direct from time to time and pending further directions, said proceeds shall be payable to her at [Southern Oregon State Bank], the escrow agent for the underlying transaction between [defendant] and [plaintiff], which this assignment secures."

Brolin and his partner, Lieber, had purchased real property from Frantz, subdivided it into three parcels and had sold them on contracts (the real estate contracts), respectively to Schneider, Valerio and Bunyan (purchasers), subject to the contract with Frantz. The real estate contracts varied, but in each transaction the vendors and the purchasers had entered into identical escrow contracts with defendant. Each contract was entitled "Escrow Instructions" and provided that, for a fee of $20 to be paid one-half by vendors and one-half by purchasers, defendant would collect contract payments from the purchasers and, after deducting collection charges, pay the balance to the vendors "as they may from time to time direct, but pending other directions, by [depositing one-half to each of the vendors' bank accounts with defendant]." Each escrow contract also provides:

"3. Notwithstanding anything to the contrary, therein appearing, you have no duty to know or determine the performance or nonperformance of any term or condition of any contract or agreement between the parties hereto, and your duties and responsibilities are limited to those specifically herein.

"* * * * *

"5. If you shall receive any instrument of conveyance of the interest of Buyers or Sellers in the property deposited with you or described in the instruments deposited with you, accompanied by your assignment fee of _____ you shall hold the same subject to these instructions or as you may otherwise be directed by the Transferors and the Transferees. If you receive notice in writing signed by the Transferors that such conveyance has been made, accompanied by your assignment fee, you shall take notice thereof. In either such event, the Transferees shall thereupon be substituted for the Transferors for all the purposes of these instructions. You shall be

under no obligation to determine the sufficiency of any conveyance, the right of the Transferors to make the same, or whether, if consent of the other party to these instructions is required, such consent has been obtained.

"* * * * *

"9.  This agreement is binding upon the heirs, executors, administrators, successors, and assigns of the parties thereto."

At the bottom of each contract is a space for an assignee's signature, preceded by this statement: "The assignees agree to be bound by the provisions above set forth, in the place and stead of the sellers named herein."[3]

Defendant deposited Brolin's share of the purchasers' payments on the real estate contracts in his bank account. Under a separate agreement with Brolin, defendant charged his account each month for one-half of the payment that the vendors owed to Frantz on his contract and sent the funds to Frantz.

At the time of the tavern sale, defendant received a copy of the instrument. Thereafter, it sent plaintiff Brolin's entire share of the three escrows whenever it received payments from the purchasers under the real estate contracts. It did not withhold any amounts to make the payments that Brolin owed to Frantz.

Brolin subsequently directed defendant not to send any proceeds to plaintiff, but to deposit his share from the payments collected under the escrow contracts in his bank account. He advised defendant that he would pay plaintiff directly. Brolin defaulted, and plaintiff brought this action. She alleges that defendant breached a duty to disburse funds to her under the instrument after Brolin notified defendant of it.

After trial, the court held that plaintiff was not entitled to an accounting, because the instrument "was merely an escrow instruction between defendant and [Brolin]" and, therefore, "there was no duty owed from defendant to plaintiff." The court found:

---

[3] There is a similar provision for the purchaser's assignees.

"1.   Customer Brolin is the only person who signed the [instrument] as plaintiff was not a party to the document.

"2.   The evidence supports the finding that plaintiff and customer Brolin did not intend an assignment of Brolin's interest in the escrow contracts.

"3.   Customer Brolin retained the right and duty to foreclose on the [real estate] contracts.

"4.   The evidence supports the finding that plaintiff did not want the burden of foreclosure which is inconsistent with a true assignment.

"5.   There was [sic] no amended escrow instructions directing defendant to disburse all payments to plaintiff.

"6.   The [tavern contract] and the 'assignment of proceeds' indicate that the 'assignment of proceeds' was revocable.

"7.   The [tavern contract] indicates that the 'assignment of proceeds' was only for the convenience of customer Brolin in making his payments to plaintiff.

"8.   The expert testimony of James DeCourcey supports a finding that the 'assignment of proceeds' was an escrow instruction and not a true assignment."

■     Plaintiff assigns as error that the court dismissed the complaint and granted judgment for defendant. She agrees that Brolin did not assign his vendor's interest in the property or the real estate contracts and that he retained the right to foreclose those contracts. She asserts that the record shows that she and Brolin intended a partial assignment of his share of the proceeds collected by defendant under the escrow contracts, less the amount due Frantz. She argues that, regardless of Brolin's subsequent instructions to defendant, the escrow contracts bound defendant to continue to honor the instrument after it was notified of it, because they do not prohibit a partial assignment of Brolin's rights.

Under the escrow contracts, defendant's duty was to follow Brolin's instructions as he gave them from time to time. Paragraph 3 states that defendant's "duties and responsibilities are *limited to those specifically herein.*" (Emphasis supplied.) Even if the instrument were a binding assignment between Brolin and plaintiff, defendant's receipt of notification of it did not increase defendant's responsibilities. It followed Brolin's directions when it sent plaintiff the proceeds of the escrow accounts after receiving a copy of the instrument

and when it followed his later contrary instructions to deposit the proceeds in his account.[4]

Plaintiff contends, in the alternative, that the proceeds of an escrow are a "general intangible," ORS 79.1060(2), that defendant is an "account debtor" as "the person who is obligated on [a] general intangible," ORS 79.1050(1)(a), and that, accordingly, it is liable to her. *See* ORS 79.3180. Even assuming that the proceeds of the escrow account were a "general intangible" in which plaintiff acquired a security interest and that defendant was an "account debtor," its only obligation with respect to Brolin's share of the proceeds was to transmit it as he might direct from time to time. *See McCallums, Inc. v. Mountain Title Co.,* 60 Or App 693, 654 P2d 1157 (1982). It did so. The court did not err when it held that plaintiff is not entitled to an accounting.

Affirmed.

---

[4] Paragraphs 5 and 9 and the certification in the escrow contracts only require defendant to honor an assignment of Brolin's vendor's interest, provided that it receive an instrument of conveyance or written notice from Brolin of the conveyance and an assignment fee. Plaintiff does not assert that an assignment fee was paid.