### In re SNODGRASS.

### PUGH v. SNODGRASS et al.

(Circuit Court of Appeals, Sixth Circuit. November 4, 1913.)

#### No. 2,366.

**1. APPEAL AND ERROR (§ 1010*)—REVIEW—PRESUMPTIONS—FINDINGS OF COURT.**

The conclusion of a trial judge on a question of fact, based on evidence taken before him, is entitled to great weight and will not be reversed unless there is a decided preponderance of evidence against it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010.*]

**2. BANKRUPTCY (§ 303*)—FRAUDULENT TRANSFER OF PROPERTY—SUFFICIENCY OF EVIDENCE.**

A decree of the District Court refusing to set aside as fraudulent transfers of property made by a bankrupt to his wife before the claims of any of the bankruptcy creditors accrued *held* sustained by the evidence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

In the matter of Silas L. Snodgrass and Clinton W. Snodgrass, doing business as S. L. Snodgrass & Son, bankrupts. Petition by William J. Pugh, trustee, against Blanche W. Snodgrass, Silas L. Snodgrass, and others. From a decree dismissing the petition, the trustee appeals. Affirmed.

The trustee filed a petition alleging that Silas Snodgrass, a member of the bankrupt partnership, had, in anticipation of bankruptcy and in fraud of creditors, transferred to his wife, Blanche Snodgrass, a piece of real estate which was their home, $12,000 in money which was the proceeds of a manufacturing company stock which had stood in his name on the corporate books, and $2,500 (in value) of the capital stock of the Helvetia Savings & Banking Company, which stock stood in his name on the bank books. These transfers were sufficient to change the situation of the partners from solvency to insolvency. Mrs. Snodgrass answered, ·claiming that the corporate stock and the bank stock had in fact been hers long before the bankrupt partnership was formed, and that, for the real estate, she paid an ample consideration and took it over in good faith. The issue so joined was tried by oral testimony before the District Judge, so that he saw and heard the witnesses. He found that Mrs. Snodgrass was right in her positions; and, from the resulting decree, the trustee appeals.

Burch, Peters & Connolly and James M. Stone, all of Cincinnati, Ohio (O. G. Bailey, of Cincinnati, Ohio, of counsel), for appellant.
C. W. Baker, of Cincinnati, Ohio, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] In accordance with our settled practice, we must give great weight to the conclusion of the trial judge. If Mr. and Mrs. Snodgrass told the truth in their testimony, the petitioner had no case. Their veracity was the controlling question, and this may be so far judged by their manner and by the atmosphere, which cannot be reproduced in a printed record, that only when "there is a decided preponderance against the judgment" will an appellate court reverse such a decree. Cleveland v. Chisholm (C. C. A. 6) 90 Fed. 431, 434, 33 C. C. A. 157; Monongahela v. Schinnerer (C. C. A. 6) 196 Fed. 375, 379, 117 C. C. A. 193.

[2] As to the manufacturing company stock, their testimony is that from time to time, as Mr. Snodgrass acquired this stock in installments, he took the certificates home and gave them to his wife; that she put them away and always kept them; and that she did not know that it was necessary or advisable to have them transferred on the corporate books. This was the condition when, in 1906, negotiations were had between Mrs. Snodgrass and the manager of the corporation for the sale of this stock by her to him. It was of the par value of $14,500, and the tentative sale price was $20,000. In this situation, the corporation brought suit against Mr. Snodgrass, claiming a large indebtedness, and levied on the homestead and on this corporate stock standing in his name. Mrs. Snodgrass then demanded that the corporation reissue the stock to her and, on its refusal, brought

suit against the company as for conversion. This litigation and cross-litigation continued in the Ohio trial and appellate courts until March, 1910, when all controversies were settled. Mrs. Snodgrass turned over the certificates of stock and released all claim against the corporation. It paid her $12,000 and released Mr. Snodgrass from its claims, and released also the levy upon the homestead. Simultaneously Mr. Snodgrass deeded the homestead to his wife. His equity in the homestead, above incumbrances and exemptions, was not worth more than $2,000 or $3,000, and Mrs. Snodgrass' acceptance of $12,000 for the stock, instead of $20,000, its claimed value, in accomplishing her desire to have her husband released from these claims, makes the consideration for the transfer of the home coming to her.

This story, as it reads in the printed record, is of the class always subject to suspicion. In their first testimony before the referee, Mr. and Mrs. Snodgrass made statements difficult to reconcile with their testimony before the District Judge; but they gave an explanation of the discrepancy which the judge evidently accepted as sufficient. Under such circumstances, the doubt and suspicion which the printed record raises are not sufficient; the decree of the trial court cannot be overturned merely because we are not sure that it is right.

The trustee's position, in attacking this transaction, is much weakened by the fact that he represents only creditors of the bankrupt firm who gave credit two or three years after Mrs. Snodgrass' claimed ownership of this stock had received great local notoriety and after she had done everything that she could do to appear as its legal owner.

As to the Helvetia stock, the testimony is far from satisfactory, but it tends to show that just at the beginning of the now bankrupt business, and for the purpose of raising money which was put into the business, Mr. Snodgrass borrowed $2,500 upon a term endowment policy, payable to himself, but in which Mrs. Snodgrass was beneficiary in case of his death during the term, and that, as a condition of getting Mrs. Snodgrass to sign the necessary release, he gave to her the Helvetia stock or such portion as was not already equitably hers. As against creditors then existing, the consideration for this transaction would have been of doubtful sufficiency; but taking into account the date the transaction occurred, the use made of the money, the common and natural feeling that life insurance equitably belongs to the family, no matter what the form of policy, and the absence of any probable motive at that time to defraud the subsequent creditors whom the trustee now represents, we think the decree below should not be disturbed in this particular.

The decree will be affirmed, with costs.