ESCANABA TRACTION CO. v. BURNS et al.

BURNS v. ESCANABA TRACTION CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 6, 1919.)

Nos. 3213, 3214.

1. APPEAL AND ERROR &⟹1010(1)—REVIEW—FINDING OF FACT.
   Where there was express testimony supporting the District Court's conclusion on an issue of fact (where testimony was taken in open court), the Circuit Court of Appeals is bound to accept such conclusion, unless the evidence decidedly preponderates against it.

2. ATTORNEY AND CLIENT &⟹98—PAYMENT TO ATTORNEY UNDER AUTHORITY OF ASSIGNEE—LIABILITY OF SETTLOR FOR MISAPPLICATION.
   A traction company, which paid money due contractors to an attorney under authority therefor by a lender to and holder of an assignment from the contractors was not liable to the lender and assignee for the attorney's claimed misapplication of the funds in part.

3. SUNDAY &⟹11—CONSENT TO SETTLEMENT—INVALIDATION.
   Though a lender to and holder of an assignment from a firm of contractors which did work for a traction company gave his consent on Sunday to a settlement of the contractors' claim against the traction company, the settlement was not, under the facts of this case, invalidated, though the statutes of both states where the transactions occurred make Sunday contracts invalid.

4. SUNDAY &⟹15—CONSENT TO SETTLE JUDGMENT—RATIFICATION.
   Where the lender to and holder of assignment from a firm of contractors which had done work for a traction company on Sunday gave consent to his attorney, acting also for others interested, to settle the contractors' judgment claim against the traction company, and did not withdraw the authority given during the two days which elapsed until the settlement was actually made, such lender and assignee is estopped from denying, as against the traction company, in suit to set aside satisfaction of judgment by it, that his consent to the settlement had legal efficacy.

5. COMPROMISE AND SETTLEMENT &⟹19(2)—SETTING ASIDE SETTLEMENT—EQUITABLE CONSIDERATIONS.
   Equity would not set aside satisfaction of judgment in favor of contractors against a traction company, effected between the company and a lender to and holder of assignment from the firm of contractors, as well as others interested, where under the facts such action would not accord with equity and good conscience.

---

&⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. ASSIGNMENTS &⇒58—PARTIAL ASSIGNMENTS IN EQUITY.

Though it is the general rule at law that a debtor will be protected against the splitting up of claims against him, the rule has no application in equity, which can adjust the rights of all interested in a single suit, and it is settled doctrine in the state and federal courts that partial assignments are enforceable in equity, irrespective of acceptance by the debtor, and though made only by way of security; the sole control of the claim so assigned, as regards its settlement, not being regarded as left with the debtor.

7. COMPROMISE AND SETTLEMENT &⇒19(2)—SETTING ASIDE—CONDITION PRECEDENT—REINSTATEMENT OF PROCEEDING TO REVIEW JUDGMENT SETTLED.

In suit to set aside settlement by a traction company of judgment against it in favor of a firm of contractors who had assigned to lenders to them, reinstatement of writ of error from the Circuit Court of Appeals for review of the judgment *held* not a condition precedent to relief to plaintiffs, the lenders to and holders of assignment from the contractors, who had nothing to do with the dismissal of the writ of error or the discharge of the judgment.

8. SUBROGATION &⇒1, 31(1)—FAILURE TO PAY CLAIM IN FULL—BENEFIT OF RELEASE OF SECURITY.

Where a traction company, which had employed a firm of contractors, did not pay in full the claim of a lender to and holder of an assignment from the contractors in settling with the attorney for the lender a judgment against it in favor of the contractors, as against other lenders to the contractors it was not entitled on any theory of subrogation to the benefit of the release of the security held by the lender, when judgment in favor of the contractors against the traction company was settled by the attorney for such lender; "subrogation" not being matter of legal right, but merely the mode which equity adopts to compel the ultimate payment of a debt by one who in justice should pay it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

9. APPEAL AND ERROR &⇒977(1)—EQUITY &⇒392—APPLICATION FOR REHEARING—DISCRETION OF TRIAL COURT.

Application for rehearing was addressed to the sound discretion of the trial judge, a discretion not reviewable on appeal, in the absence of a showing of its abuse.

Appeals from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Suit in equity by Joseph Burns and others against the Escanaba Traction Company; the Escanaba National Bank, and others. From the decree, plaintiff Joseph Burns and defendant Traction Company appeal. Decree affirmed.

Eben R. Minahan, of Green Bay, Wis., for appellant Burns.

Thomas J. Riley, of Escanaba, Mich., and G. F. Clifford, of Green Bay, Wis., for appellant Escanaba Traction Co.

Thomas Clancey, of Ishpeming, Mich., for appellee Escanaba Nat. Bank.

Charles M. Owen, of Grand Rapids, Mich., for appellees Burns and others.

Before WARRINGTON and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge.  John Brogan and one Rich, copartners as Brogan & Rich, had a contract with the Escanaba Traction

Company for certain construction work. In a suit on the law side of the court below, for breach of this contract, Brogan & Rich obtained verdict against the traction company on April 17, 1914, for $15,759.16 damages. Judgment was rendered on the verdict December 17th following, and from that judgment writ of error was taken from this court. In the performance of the construction contract, Brogan & Rich borrowed from the Escanaba National Bank $7,000, giving the bank therefor an order on the traction company April 6, 1912, which was accepted by the latter two days later. Brogan had borrowed from four of his relatives sums amounting to $16,000, as follows: From Joseph Burns $7,000, from Ellen Burns $3,000, from Catherine Kane $3,500, and from James Brogan $2,500. Part, at least, of these sums was used in performing the construction work in question. After verdict, and before judgment, Brogan & Rich, by Brogan, gave to each of the latter's four relatives a formal written assignment of their entire claim against the traction company, reciting the pendency of suit thereon in the United States court, each assignment stating that it was "given to secure" the person named "for a loan of. money" made to the firm in the specific sum stated, which was in each case the principal of the loan. No question is made of Brogan's complete authority to so act for the firm. The assignment to Ellen Burns was in terms made "subject to a previous assignment of the same funds in favor of Joseph Burns," the assignment to Catherine Kane subject to the assignments to both Joseph and Ellen Burns, and that to James Brogan to the assignments to each of the other three. The traction company was fully informed of these assignments, being served with a copy of each.

On March 16, 1915, Brogan & Rich, through Brogan, and with the participation of the attorneys who had represented them in securing the judgment, effected a settlement with the traction company, whereby the latter paid $12,500, of which $7,700 was paid by the traction company to the bank in payment of its claim, with interest thereon, the remaining $4,800 being paid by the traction company to Messrs. Martin, Martin & Martin, attorneys for Brogan & Rich. The judgment against the traction company was thereupon formally discharged, and under stipulation of counsel the writ of error from this court was dismissed. No question of Brogan's authority to represent Brogan & Rich in making this settlement is involved. Martin thereupon paid Ryall $400 for his services as attorney for Brogan & Rich in the suit against the traction company, paid Calnan & Riley $723.38 in settlement of a claim presented by them as members of the firm of John Brogan & Co., for work done and materials furnished under a subcontract for the construction work in question, retained for themselves $1,835, partly for services rendered and expenses incurred in the suit against the traction company and partly for services and expenses in connection with other suits in which John Brogan and others were interested, and tendered to Joseph Burns the remaining $1,831.72, which Burns refused to accept.

Joseph and Ellen Burns, Catherine Kane, and James Brogan thereupon brought the instant suit, to set aside the satisfaction of the judgment against the traction company and for an accounting with the sev-

eral defendants. The traction company and the bank appeared and answered on the merits. Upon hearing on pleadings and proofs, the court below found, first, that the settlement was authorized by and is binding upon Joseph Burns, as a release of the security of his assignment of the judgment, entitling him to the remaining $1,831.72, and without prejudice to his right to recover, by suit or otherwise, from defendant Martin and defendants Calnan & Riley (who, being nonresidents and without the jurisdiction, were not served with process and did not appear), "any moneys which may have been unlawfully retained by the one or paid to the other out of the balance of $4,800 received from said defendant company"; second, that the settlement was without authority or consent of the plaintiffs Ellen Burns, Catherine Kane, and James Brogan, and that these three plaintiffs are entitled to have the settlement set aside as to the balance of the judgment, including costs and interest, after the application of the $12,500 actually paid thereon, and to receive such balance in the priorities before stated; and, third, that the national bank was authorized to receive the $7,700 in question out of the settlement, and was so authorized by plaintiff Joseph Burns. Decree was entered accordingly. The traction company appeals (No. 3213) from so much of the decree as requires it to pay the balance of the judgment against it. Joseph Burns appeals (No. 3214) from the refusal to allow him further relief than stated.

[1, 2] 1. *Joseph Burns' Appeal.* Previous to the settlement Burns' claim had been reduced by payment of $2,000 on the principal. Complete relief was denied him on the ground that he authorized the settlement at $12,500. He was present at a conference between Brogan and his counsel, at Martin's home in Green Bay, Wis., for the purpose of considering the question of settlement, which was accomplished two days later. Burns' express assent to a settlement at $12,500 is claimed to have been given at this conference. On this question of fact the trial court said:

"Did Joseph Burns authorize or consent to the settlement? Upon this question the testimony is in sharp conflict. Burns not only denies that he gave his consent to the settlement, but asserts that he refused to consent thereto. His testimony is corroborated to some extent by that of John Brogan and one other witness and by the fact that he refused to sign a power of attorney authorizing Brogan to act for him in the settlement. On the other hand, the two attorneys who negotiated the settlement are equally positive in their statements that Burns authorized them to act for him. These attorneys are men of integrity and high standing in their profession. That they believed themselves to be clothed with full power to act cannot be doubted. Burns knew approximately the amount of money which could be obtained; he did not openly object to the settlement until after it had been made and he had discovered the small amount he was to receive. From the whole record it fairly appears that the attorneys were authorized by Burns to settle the judgment for the sum of $12,500."

The entire testimony in the case, except that of Rich, who did not attend the conference, was taken in open court. There was express testimony supporting the court's conclusion; and this conclusion we are bound to accept, unless the evidence decidedly preponderates against it. Cleveland v. Chisholm (C. C. A. 6) 90 Fed. 431, 33 C. C. A. 157;

Pugh v. Snodgrass (C. C. A. 6) 209 Fed. 325, 126 C. C. A. 251. There is no such preponderance.

It seems reasonably clear that both Martin and Ryall understood Burns to give them the claimed authority. They say that both Brogan and Burns understood that $12,500 might prove to be all the traction company would pay; that Burns told them to "do the best you can, get $13,000 if you can, but do the best you can"; and that the settlement was made in reliance upon this authorization from Burns and a similar one from Brogan. While there is evidence of assertion by the attorneys that they would exercise the right to settle, even if the consent in question was not given, we think the testimony falls short of proving duress.

Burns was naturally disappointed with the amount left for him. The interest on the bank's claim made it $200 greater than treated at the conference; but the trial court was clearly right in recognizing the bank's lien at $7,700 and as prior to plaintiffs' liens. The claim of Calnan & Riley, however, was not mentioned at the conference. They had in fact no lien upon the judgment. Its payment is defended largely on the ground that the services it represented entered into the amount of the recovery against the traction company; and Martin, who represented Calnan & Riley also, had agreed to see to its payment. Brogan, however, had given what he asserts to be adequate security for the claim and was unwilling to have the deduction made. The services and disbursements of Martin's firm, for which he retained $1,835.00, included items amounting to several hundred dollars rendered in other matters, for which no lien could be claimed. The right to retain or disburse these items was open to controversy. But the traction company, having in good faith paid the money to Martin, under authority therefor by Joseph Burns, was not liable to him for Martin's claimed misapplication in part; and the proper course was taken in not passing upon those items, and in making the award to Burns without prejudice to future recovery on account of them.

[3-5] We see no merit in the contention that the fact that Burns' consent was given on Sunday is enough to invalidate the settlement. True, the statutes of both Wisconsin and Michigan make Sunday contracts invalid; although in Wisconsin the case would seem to fall within the rule that where both parties are equally guilty of a violation of law the courts will give relief to neither. Cohn v. Heimbauch, 86 Wis. 176, 180, 56 N. W. 638. Apart, however, from this consideration, the settlement was not made until two days after the authority was given, and meanwhile Burns made no attempt to withdraw his consent. In executing the settlement Martin claimed to act as attorney in fact for Burns as well as for several others interested, and signed the papers in such capacity. It is not claimed that the traction company had reason to believe that Martin's only authority from Burns was one given on Sunday. The settlement seems to have been made in good faith by both the traction company and the attorneys for the judgment plaintiffs. These circumstances should estop Burns from now denying, as against the traction company, that his consent had legal efficacy. Bronson's Executor v. Chappell, 12 Wall. 681, 20 L. Ed. 436; Gibbs Co. v. Bruck-

er, 111 U. S. 597, 4 Sup. Ct. 572, 28 L. Ed. 534. Moreover, Burns is in a court of equity asking equitable consideration. To set aside the settlement as to Burns would not, under the facts stated, accord with equity and good conscience. Blakesley v. Johnson, 13 Wis. 592. We think the decree as to Burns should be affirmed.

2. *The Traction Company's Appeal.* At the date of the decree below the balance of the Brogan & Rich judgment against the traction company, above the $12,500 paid on the compromise, was $4,547.-97. This amount was ordered paid to Ellen Burns, Catherine Kane, and James Brogan, the face of whose claims aggregated $9,000, in the order of priority given by the respective assignments.

(a) The contention that these appellees consented to or authorized the settlement needs little attention. On this subject Judge Sessions said:

"The other plaintiffs [those other than Joseph Burns] not only were not represented and did not participate in the negotiations, but positively refused to appoint an agent to represent them or consent to the settlement."

The record so amply supports this conclusion as to make discussion or statement of evidence unnecessary.

(b) The traction company, however, urges that the assignment, being merely by way of security and not absolute, being not of the entire claim, but only of part thereof, and the control of the claim being left with the assignor, the transaction amounted to a splitting up of the claim and rendered the assignments unenforceable against the traction company, except so far as accepted by it. In a fair sense, the record indicates a practical, although not a formal, acceptance by the traction company of the assignments. The whole theory upon which its defense below was rested recognized that the assignments were valid and binding upon the traction company. Its answer admits notice of the assignments and the receipt of copies of the same, and alleged "that in making the settlement" it "relied expressly upon the terms and conditions of said assignments thus served upon" it.

The real contention in this respect is that each of the four plaintiffs authorized the attorneys for Brogan & Rich to make the settlement, but that, even if Catherine Kane and James Brogan did not give the authority, Joseph and Ellen Burns did, and that the traction company was protected by that consent, inasmuch as the claims of the two Burns were more than enough to exhaust the remnant of the judgment. The traction company's manager, who made the settlement, testified:

"I knew of these assignments before I went out. I knew, because they were served on me, sent by mail to me, copies of each assignment."

He also said he had read them, and knew they were expressly "subject one to the other after Joseph Burns," and again:

"I relied upon the statements in the assignments in making the release. I would not have made this settlement in the way we did, if it had not been that those assignments were made subject to Joseph Burns."

The learned counsel who represented the traction company on the hearing below stated, in answer to the court's question, that "we do not

make any claim as against assignees who are shown not to have authorized the settlement." The contention made here that the assignments are unenforceable is not well taken.

[6] While it is the general rule at law that a debtor will be protected against being harassed by a dividing up of the claim against him, this consideration has no application to equity, which can adjust the rights of all interested in a single suit; and it is the settled doctrine, not only of the federal courts but of the state courts generally, that such partial assignments are enforceable in equity, without regard to the question of acceptance by the debtor, and although made only by way of security. The sole control of the claim thus assigned, as affects its settlement, is not regarded as left with the debtor. Peugh v. Porter, 112 U. S. 737, 742, 5 Sup. Ct. 361, 28 L. Ed. 859; Fourth St. Bank v. Yardley, 165 U. S. 634, 644, 17 Sup. Ct. 439, 41 L. Ed. 855; Rogers v. Penobscot Mining Co. (C. C. A. 8) 154 Fed. 606, 615, 83 C. C. A. 380; Railway Co. v. Volkert, 58 Ohio St. 362, 50 N. E. 924; Line v. McCall, 126 Mich. 497, 507, 85 N. W. 1089; James v. Newton, 142 Mass. 366, 377, et seq., 8 N. E. 122, 56 Am. Rep. 692; Lanigan v. Bradley Co., 50 N. J. Eq. 201, 204, et seq., 24 Atl. 505; Exchange Bank v. McLoon, 73 Me. 498, 505, et seq., 40 Am. Rep. 388; Alexander v. Munroe, 54 Or. 500, 509, et seq., 101 Pac. 903, 103 Pac. 514, 135 Am. St. Rep. 840. And see The Elmbank (D. C.) 72 Fed. 610, 614 (opinion by Judge Morrow). On the point generally that an assignment of a chose in action as security merely is enforceable in equity, see Curtis v. Walpole (C. C. A. 1) 218 Fed. 145, 147, et seq., 134 C. C. A. 140. We find nothing to the contrary of this rule in the earlier cases of Kendall v. United States, 74 U. S. (7 Wall.) 113, 116, 19 L. Ed. 85, and Mandeville v. Welch, 5 Wheat. 277, 288, 5 L. Ed. 87, especially when the facts of those cases are taken into account.

[7] (c) The traction company contends that in any event equity requires, as a condition precedent to relief to those appellees, that the proceeding for review by this court of the judgment of the District Court should be reinstated. We cannot assent to this proposition. Appellees had nothing to do with the dismissal of the writ of error or with the discharge of the judgment entered in the District Court. Those steps were part and parcel of a settlement with which they had nothing to do, and as to which they were not consulted, except as some or all of them were asked to authorize John Brogan to act for them. It is true that before the settlement the judgment was subject to reversal, and in such event to the expense and risk of a new trial. But, as the case then stood, the plaintiffs in the judgment, as well as other claimants (thus including Joseph Burns, the bank, Calnan & Riley, and the attorneys for Brogan & Rich), were interested in sustaining the judgment, as well as in prosecuting a new trial in case of reversal. As the case now stands, appellees would be compelled to bear the sole burden, risk, and expense of defending the present judgment, as well as of prosecuting a new trial if ordered, all for a possible recovery of a margin above $12,500.

[8] (d) The traction company insists, finally, that the release of the security held by Joseph Burns inured to the benefit of the traction com-

pany to the full amount of the debt secured by the assignment to him. Had the traction company paid Joseph Burns' claim in full, it would be entitled to this benefit; but this it did not do, or even assume to do, and we therefore think the contention referred to was rightly overruled. The settlement was primarily of the traction company's debt to Brogan & Rich. The assignment of that debt to Burns was simply to secure him for what Brogan & Rich owed him. The traction company's only concern in respect to the assignees was to make sure that in settling with Brogan & Rich it was protected against further claims by the assignees. The settlement papers recited the payment of $7,700 to the bank and $4,800 to Brogan & Rich, Calnan & Riley, and Joseph and Ellen Burns. In consideration of these payments Brogan & Rich and the traction company formally released each other from all claims and demands, and the traction company was in addition released from all claims and demands "on account of said claim of Calnan & Riley and on account of said assignments herein referred to," viz. those to Joseph and Ellen Burns. The traction company was merely paying its own debt. The debt from Brogan & Rich to Burns was not paid, except to the extent of the moneys applied upon it. The theory on which one paying a debt is, under certain circumstances (as of suretyship, trust or other equitable relation), subrogated to the benefit of the security held for the debt has, in our opinion, no application to the present situation. Subrogation is not matter of legal right; it is merely "the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." Arnold et al. v. Green, 116 N. Y. 566, 571, 23 N. E. 1, 2. It is impossible to bring this case within that definition. Judge Sessions well said:

"The release of the security did not constitute payment and discharge of the debt beyond the amount actually paid and applied thereon. The most that can be claimed for Joseph Burns' assent to the settlement is that, in consideration of the payment to him of whatever sum might remain from the $12,500 after the satisfaction of all valid prior claims or liens upon the fund, he released and discharged his lien upon the judgment. * * * Burns was the antagonist of the traction company, and, in agreeing to the settlement, was acting solely in the interest of himself and the other assignees. He agreed to and did release and surrender his security and nothing else. The traction company obtained from him such release and nothing else."

If Burns saw fit to release his security on receiving less than due him, there is, in our judgment, no more inequity as against the traction company in giving the subsequent security holders the benefit of the remaining security than if Burns' debt had been decreased by payment directly through Brogan & Rich, instead of indirectly through the traction company. The whole difficulty in this respect has grown out of the fact that the traction company mistakenly accepted the authority of Martin to act for both Joseph and Ellen Burns, coupled with the assumption that the other plaintiffs had no concern with what was done.

We are the better satisfied with this conclusion from the facts (not, however, forming its basis) that, although the traction company is protected by the form of the assignments to the extent of what was ac-

tually paid Burns, both Brogan and Joseph Burns seem to have regarded the assignments as intended, as between the assignees, to secure them ratably and without preference, and that, according to what was evidently Burns' understanding of the settlement, nearly $3,000, or more than 50 per cent., of the amount of his debt would have been paid.

While by the decree below the three appellees will normally receive through the traction company in the aggregate (one at least individually) more than they would had the judgment against Brogan & Rich been originally paid in full, yet not only is this result at the expense of Burns, and not of the traction company, but the remnants of their respective debts against Brogan & Rich are correspondingly decreased.

[9] The application for rehearing was addressed to the sound discretion of the trial judge, a discretion which is not reviewable here in the absence of showing of its abuse. Such showing is not made. .

We have carefully considered all the criticisms made to the decree below, although we have not discussed them all. We find no error in the decree, and it is accordingly affirmed.